O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-1870 AHM (VBKx) | | Date | June 10, 2008 |
|---|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys NOT Present for Plaintiffs: | Attorneys NOT Present for Defendants: |
|---|---|

Proceedings:          IN CHAMBERS (No Proceedings Held)

### Amended Order on Plaintiff's Partial Summary Judgment Motion

This order amends and supersedes the Court's May 27, 2008 Order, particularly with respect to damages.

## I.    INTRODUCTION

On March 21, 2007, Plaintiff GoPets Ltd. filed suit against Edward Hise, Joseph Hise, and Digital Overture, Inc. ("Defendants"), the company that Edward and Joseph Hise serve as officers. The complaint alleged cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act (ACPA) with respect to "gopets.com," service mark infringement and unfair competition under the Lanham Act and state law, service mark dilution under the Lanham Act and state law, and false advertising under state law. On March 3, 2008, Plaintiff filed a First Amended Complaint to add cybersquatting claims with respect to eighteen additional domain names.[1]

Plaintiff now seeks partial summary judgment on its claims for federal and state service mark infringement and unfair competition and its ACPA claims. Plaintiffs seek a broad permanent injunction and order requiring Defendants to transfer <gopets.com> and eighteen other domain names to Plaintiff. Plaintiffs also seek statutory damages of

_____

[1] gopet.mobi, gopets.name, gopets.mobi, gopetssite.com, goingpets.com, gopet.biz, gopet.org, egopets.com, gopets.bz, gopets.ws, gopet.tv, gopet.ws, gopets.bz, gopet.de, gopet.eu, gopet.name, mygopets.com and igopets.com.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

$100,000 for each of those domain names, for a total of $1,900,000, as well as reasonable attorney's fees and costs.

For the reasons set for below, the Court GRANTS Plaintiff's motion for partial summary judgment.

## II.   EVIDENTIARY RULINGS

In support of their opposition to Plaintiff's motion, Defendants filed a Statement of Genuine Disputed Material Facts ("SGI") in which they set forth facts (without numbering them). Their SGI does not comply with the Court's requirements because it does not indicate which of Plaintiff's asserted undisputed facts they dispute. (The declarations described below do contain some references to the SUF.) Moreover, Defendants did not number the supposed disputed facts. Out of necessity the Court has numbered each of Defendants' facts according to their placement in the table.

Defendants' SGI relies solely on the Declaration of Edward Hise and the Declaration of Joseph Hise, both dated April 7, 2008. These two declarations are identical. Plaintiff objects to nearly every paragraph in those declarations and urges the Court to disregard these declarations entirely, principally because they are blatantly self-serving. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (noting that courts may refuse to find a "genuine issue" where the only evidence presented is "uncorroborated and self-serving" testimony) (citation omitted). Although most of the Hises' statements are indeed uncorroborated and self-serving, a few of them are not. The Court thus rules on Plaintiffs' objections as follows (these rulings apply to both declarations):

The Court sustains Plaintiff's objections to declaration paragraphs 2, 3, 4, 5, 8, 12 and 13 because the statements in those paragraphs lack foundation in personal knowledge and constitute inadmissible opinion and legal argument.   The Court sustains Plaintiff's objection to sentences 1, 2, 3, and 6 in paragraph 9 for the same reasons, but admits the remaining sentences.

The Court sustains Plaintiff's objection to paragraph 16 because the statement therein has no relevance to the claims and defenses at issue.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|----------|----------------------|------|---------------|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

The Court overrules Plaintiff's objection to paragraphs 6 and 7. Defendants do not offer the quotation of the WIPO decision to prove the truth of the matter asserted. The apparent purpose of paragraphs 6 and 7 is to provide a basis for Defendants' claim that they had reasonable grounds that their use of the domain names was lawful. Paragraphs 6 and 7 are relevant to Defendants' intent.

The Court overrules Plaintiff's objections to paragraphs 10 and 15. The Court notes that in those paragraphs Defendants contradict their response to Request for Admission No. 17, which Magistrate Judge Kenton had ruled that Defendants could not withdraw.[2] Nonetheless, Plaintiff's objections go to the weight of Defendants' statements, not their admissibility.

The Court overrules Plaintiff's objection to paragraph 17. Although the statements are a poor attempt to insinuate that some unidentified third party, such as an "intern," "may have" been responsible for inserting the term "gopets" into the home pages and metatags of Defendants' website, this deficiency goes only to their weight.

Although ¶¶ 18 and 19 are self-serving, they are admissible.

## III.    FACTUAL AND PROCEDURAL BACKGROUND[3]

Many of the facts recited herein are already set forth in the minute order granting Plaintiff's motion for a preliminary injunction, but the Court will repeat them here to account for the summary judgment evidence.

GoPets Ltd. is a Korean company that produces an online virtual community game consisting of interactive 3D pets that roam across the Internet, visiting the desktops of community members to socialize, play games and create friendships among GoPets players (the "Game"). Declaration of Erik Bethke ("Bethke Decl.") ¶ 2. The GoPets website is accessed through "gopetslive.com" and "gopets.net." *Id.* On or before July 14, 2004, Plaintiff launched an interactive demo version of its website at

---

[2]Docket No. 101.

[3]All facts are undisputed unless otherwise noted.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | | Date | June 10, 2008 |
|---|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | | |

www.gopetslive.com.  SUF ¶ 3.  The demo version of GoPets' website attracted the attention of investors.  SUF ¶ 7.  In early August 2004, Plaintiff placed additional content on gopetslive.com and began issuing press releases.  SUF ¶ 4.  Plaintiff has continuously used the mark GOPETS in connection with the demo and the online community of virtual pets located at www.gopetslive.com since July 2004.  SUF ¶ 5.  Plaintiff's site has attracted media attention in both industry-specific and general publications, beginning as early as 2004.  SUF ¶ 6.  Plaintiff has attracted investors in the last two years, including Liberty Media Corporation, Nexon Corporation, and Tencent Holdings Limited.  SUF ¶ 8.  It has spent approximately $846,033 on advertising and marketing since 2005.  SUF ¶ 64.

In March 1999, Defendant Edward Hise ("E. Hise") registered the domain name <gopets.com> with Network Solutions, LLC.  Pl.'s Statement of Undisputed Material Facts ("SUF") ¶ 1.  Defendants claim in their declarations that Digital Overtures registered and paid for that domain name (SGI ¶ 6).

On July 2, 2004, Erik Bethke ("Bethke"), CEO of GoPets, wrote to E. Hise and asked whether Hise was interested in selling <gopets.com>.  SUF ¶ 2.  On August 11, 2004, Bethke mailed a letter to E. Hise at several addresses, again inquiring as to a possible purchase of <gopets.com>.  SUF ¶ 9.  In a reply email dated September 2, 2004, E. Hise stated that although he and his company had originally intended to develop a website for <gopets.com>, "[t]he website was placed on placed on hold and still is today," and they "will not have time to pursue this endeavor because of the time required to keep [their] core business a success."  SUF ¶ 10.  Hise stated he was accepting serious bids for domain name and invited Bethke to submit a bid by September 15, 2004.  *Id.*

On September 26, 2004, E. Hise for the first time posted content to <gopets.com>: a photo and a description of a lost dog.  SUF ¶ 11.  Defendants state: "Any content that may have been posted on <gopets.com> on September 26, 2004 was not the first content that had been posted to <gopets.com>."  SGI ¶ 7.  (They do not provide any details or evidence other than their declarations of that claimed earlier-posted content.)  Defendants admit that no products or services were ever offered for sale, nor any advertising was placed, on any websites bearing the domain names they owned.  SGI ¶¶ 4-5.  Defendants have not sold any goods or services, offered anything for purchase, or collected any money, using <gopets.com>.  SUF ¶ 46.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | | Date | June 10, 2008 |
|----------|------------------------|---|------|---------------|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | | |

On September 30, 2004, Plaintiff applied to the USPTO for a federal service mark registration for GOPETS.  SUF ¶ 12.  Defendants did not object to Plaintiff's application to register the GOPETS mark.  SUF ¶ 13.

Plaintiff launched the GoPets online community, the Game, on or about August 4, 2005, from gopetslive.com.  SUF ¶ 14.  The GoPets Game enjoyed success on a global scale, and today has nearly 1,000,000 users world-wide.  SUF ¶ 15.  Plaintiff registered a number of additional domain names:  www.gopetslive.com, www.gopets.net, www.gopets.jp, www.gopets.ph, www.gopets.sg, www.gopetslive.co.kr, www.gopets.us, and www.gopets.biz.  SUF ¶ 16.

In May 2006, GoPets filed a complaint against E. Hise with the World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center.  SUF ¶ 17.

Sometime after June 15, 2006, while the WIPO proceeding was pending, E. Hise placed some material on <gopets.com> that purported to "provide valuable information to assist with loving and caring for animals and pets" and provided links to sites connected with pets and their welfare.  SUF ¶ 18.

On July 26, 2006, the WIPO panel found that GoPets owned the GoPets service mark and that <gopets.com> is identical or confusingly similar to the service mark.  SUF ¶ 19.  The WIPO panel stated that it did not believe E. Hise "has ever had serious plans to develop the 'gopets.com' website" and that E. Hise "d[id] himself no favours when after seven years of inactivity he creates a simple one page 'website' at the Disputed Domain only after the Complaint has been brought."  SUF ¶ 20.  The WIPO panel did not find bad faith registration of the <gopets.com> domain name because it was registered in 1999, before Plaintiff existed.  SUF ¶ 21.

On October 30, 2006, Bethke offered $5,000 to E. Hise to purchase <gopets.com>. Declaration of Tanya L. Forsheit ¶ 8 & Ex. H at 180.

On November 7, 2006, the USPTO approved Plaintiff's application to register the GOPETS service mark, Registration No. 3,167,446 for GOPETS, for "Entertainment services, namely, providing an on-line computer game consisting of virtual pets who interact with other virtual pets over the internet."  SUF ¶ 23.  The Certificate of

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|----------|------------------------|------|----------------|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

Registration for GoPets' federal service mark indicates August 2004 as the date of first use in commerce.  SUF ¶ 24.

After October 30, 2006 and before November 15, 2006, Defendants registered at least five domain names:  gopet.mobi, gopets.name, gopets.mobi, gopetssite.com, goingpets.com.  SUF ¶ 25.

On November 15, 2006, Bethke offered $40,000 to purchase <gopets.com>.  SUF ¶ 26.  On November 20, 2006, E. Hise responded to Bethke's November 15, 2006 email, stating that Defendants would discuss the offer once "everyone is back in town, and back at work."  SUF ¶ 27.  The parties continued to exchange emails through December 5, 2006.  SUF ¶ 28.

On November 15, 2006,  Defendants registered the domain name thegopets.com.  SUF ¶ 45.[4]

Between November 20, 2006 and December 12, 2006, Defendants registered 11 additional domain names:  gopet.biz, gopet.org, egopets.com, gopets.bz, gopets.ws, gopet.tv, gopet.ws, gopet.bz, gopet.de, gopet.eu and gopet.name.  SUF ¶ 29.

On or about December 12, 2006, Defendants sent an e-mail to Bethke attaching a letter dated December 11, 2006.  The December 12, 2006 email stated as follows:

> We respectfully request that you forward this sensitive information to the appropriate Executive Officers at Liberty Media, Liberty Media Interactive, Tencent Holdings Ltd, and the Nexon Corporation as soon as it is received.
>
> Within 48 hours we will be sending written documentation of this correspondence to the general offices of Liberty Media, Liberty Media Interactive, Tencent Holdings Ltd, and the Nexon Corporation.  We would sincerely appreciate if you could also provide the direct lines of communication to us."

---

[4]This domain name is not named in the FAC because Plaintiff did not learn of it until after it filed the FAC.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|----------|------------------------|------|---------------|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

SUF ¶ 30.  The attached letter stated that Digital Overture, Inc. owned <gopets.com> and offered to sell it to Plaintiff for $5,000,000.  SUF ¶ 31.

The letter from Defendants further stated:

Any time delays in realizing ownership of the domain would continue to confuse newly adopted gopetslive.com users.  . . . The domain name will eliminate confusion .… The brief, yet highly descriptive name, would clear up any URL uncertainties for new users.  . . . If gopets.com were developed further, gopetslive.com may face competitive Meta Tagging . . . Many search engine users would find searching less confusing, increasing their chances of landing on your gaming site.  . . . Third parties would no longer accidentally link to gopets.com.

SUF ¶ 32.

On December 14, 2006, E. Hise transferred <gopets.com> to Digital Overtures, Inc.  Defendants claim that E. Hise did not transfer ownership because although there was a "transfer of names. . .listed on the publicly available WHOIS information," "at all times subsequent to the initial registration of the domain name in March 1999, the domain name gopets.com was paid for, owned by and registered on behalf of the business Digital Overture."  SGI ¶ 12.

On January 22, 2007, Plaintiff rejected this offer by letter from its counsel at Proskauer Rose LLP.  SUF ¶ 35.

In March 2007, Defendants incorporated Plaintiff's registered mark GOPETS into the home page and metatags of Defendants' website, without Plaintiff's consent.  SUF ¶ 38.  (Defendants contend that there is a factual dispute whether they or someone else, such as an "intern," "may have" incorporated the term "gopets" on the homepage and metatags.  SGI ¶ 14.)

As of March 8, 2007, <gopets.com> contained no content other than a link to the WIPO Panel's decision.  SUF ¶ 37.  On March 13, 2007, Defendants updated their

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

website again to read: "Welcome to gopets.com the official online website.  goAhead [sic] pet lovers tell your friends that gopets.com will be arriving soon!"  SUF ¶ 39.  On March 13, 2007, Defendants updated their website again to read: "Welcome to <gopets.com> the official online website.  goAhead [sic] pet lovers tell your friends that <gopets.com> will be arriving soon!"  SUF ¶ 40.  The fonts used in the <gopets.com> and gopetslive.com websites are similar in appearance.  SUF ¶ 41.

On March 21, 2007, Plaintiff filed this lawsuit.  A week later, on March 28, 2007, Defendants registered the domain name mygopets.com.  SUF ¶ 43.  On June 17, 2007, they registered igopets.com.  SUF ¶ 44.

In July and August 2007, a number of GoPets users expressed confusion, on a public GoPets discussion forum, as to the source and origin of <gopets.com> and as to whether <gopets.com> is affiliated with Plaintiff GoPets Ltd.  SUF ¶ 47.[5]  For example, one consumer wrote in the GoPets "Owner's Lounge" forum in July 2007: "I saw this today.  http://www.gopets.com.  That site never use [sic] to have that logo there.. . . . is there another company surfacing with the same name and idea? (its obvious it's a pet site whether it's the same type of pet site is questionable but . .wouldnt [sic] GP have the rights to the name?)  Or was this like.. a really old version of GoPets or something?"  and ". . . theres [sic] still the whole concern as to people getting confused by the other site which has the exact same name and not only that uses the more commonly keyed in web address . . .Snow:  At least Im [sic] not the only one completed irked by it LOL."  SUF ¶ 48.  Another consumer wrote in the "Owner's Lounge" forum in July 2007: "I just hope the banner won't mislead GoPets users.  If someone tells them about GoPets, chances are they'll type in gopets.com and be disappointed by the site.  I mean, the cartoony letters and little paw prints have the likeness of a virtual pet sites' [sic]."  SUF ¶ 50.  A third consumer wrote in the "Owner's Lounge" forum in August 2007: "[W]hen I was registering I typed taht [sic] by misttake [sic] and apparently nothing was there so you think its new and not the REAL THING?"  SUF ¶ 51.  Another consumer wrote in the "Owner's Lounge" forum in July 2007:  "at least [sic] once a week I key in the wrong address and end up there."  SUF ¶ 52.

On December 17, 2007, the Court granted Plaintiff's motion for a preliminary

---

[5]Plaintiffs filed declarations from five consumers under seal to protect their identities.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|----------|----------------------|------|---------------|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

injunction, which was subsequently entered on January 9, 2008.  Until the preliminary
injunction was granted, Defendants' <gopets.com> website displayed the same content
that was on there on March 13, 2007: a single webpage with a logo, paw prints, two lines
of text, and a header stating, in part "The Official gopets.com website."  (Minute Order,
Dec. 17, 2007 at 5).

As required by the preliminary injunction, Defendants revealed that they owned
eighteen additional domain names (described above), prompting Plaintiffs to file a First
Amended Complaint.

Finally, the Court takes judicial notice of another WIPO proceeding, this time
instituted by Defendant E. Hise on behalf of Digital Overtures.  (Notice to Court of
WIPO Decision, filed April 30, 2008, Ex. A.)  On January 23, 2008, E. Hise filed a
complaint with WIPO claiming that Plaintiff's domain name, gopets.net, is confusingly
similarly to Defendants' <gopets.com> domain name and that Plaintiff has no legitimate
interests in gopets.net.  The WIPO panel issued a decision on April 22, 2008 that cited
this Court's preliminary injunction findings and other evidence before it.  The panel
unanimously denied the Complaint and a majority of the panel also found that the
Complaint was brought in bad faith and constituted "reverse domain name hijacking."

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the
pleadings, depositions, answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as a matter of law."  The moving party bears the
initial burden of demonstrating the absence of a "genuine issue of material fact for trial."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A fact is material if it could
affect the outcome of the suit under the governing substantive law.  *Id.* at 248.  The
burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is
a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at
trial, it must come forward with evidence which would entitle it to a directed verdict if
the evidence went uncontroverted at trial.  In such a case, the moving party has the initial

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | | Date | June 10, 2008 |
|---|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | | |

burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party.  The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325.  Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'"  *Cleveland v. Policy Mgmt Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id*.  Only admissible evidence may be considered in deciding a motion for summary judgment. *Id*.; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255).  But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252.  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## V.    ANALYSIS OF DEFENDANTS' LIABILITY

Based on the above-described facts, Plaintiff argues that it is entitled to judgment as a matter of law that Defendants' use of <gopets.com> infringed the GOPETS mark and that Defendants registered all nineteen domain names with bad faith intent to profit from the mark within the meaning of the Anti-Cybersquatting Consumer Protection Act.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | | Date | June 10, 2008 |
|---|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | | |

Defendants contend rather conclusorily that genuine issues of material fact remain with respect to whether they engaged in commercial use of the <gopets.com> domain name and whether they possessed the requisite bad faith intent.

> **A.   Infringement and Unfair Competition with Respect to Defendants' Use of <gopets.com>**

To establish trademark infringement, Plaintiff must demonstrate that Defendants are using a mark confusingly similar to Plaintiff's valid and protectable mark. *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). The test for unfair competition in this context is the same as that for trademark infringement: likelihood of confusion. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (quotations and citation omitted).

In the context of the Internet, the three most important *Sleekcraft* factors are similarity of the marks, the relatedness of the goods and services, and the parties' simultaneous use of the Web as a marketing channel. *Perfumebay.com Inc. v. EBAY, Inc.*, 506 F.3d 1165, 1173 (9th Cir. 2007) (quoting *Interstellar Starship Services, Ltd. v. Epix, Inc.*, 304 F.3d 926, 942 (9th Cir. 2002)). "When this controlling troika or internet trinity suggests confusion is likely, the other factors must weigh strongly against a likelihood of confusion to avoid the finding of infringement." *Id.*

Defendants do not dispute that Plaintiff's GOPETS mark is valid and protectable , based on its senior user status and registration. Nor do they dispute Plaintiff's analysis of the *Sleekcraft* factors.

The Court agrees with Plaintiff's analysis, which focused on Defendant's use of the <gopets.com> domain name. The "controlling troika" in this case clearly weighs in favor of a finding of likelihood of confusion. First, <gopets.com> is unquestionably functionally identical in sight, sound, and meaning to GOPETS. Second, from the perspective of the Internet user, the content placed on <gopets.com> in March 2007 gives the appearance that the website may be launching something similar to Plaintiff's Game, as some of Plaintiff's customers speculated. *See* SUF ¶¶ 39-41, 47-52; *Garden of Life, Inc. v. Letzer*, 318 F. Supp. 2d 946, 964 (C.D. Cal. 2004) (the services may be considered related if "the conditions surrounding their marketing [are] such that they could be

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|----------|-----------------------|------|---------------|
| Title    | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

encountered by the same purchaser under circumstances that could give rise to the mistaken belief that the goods come from a common source.").  Finally, it is obvious that Plaintiff and Defendants' simultaneous use of the Internet is a major source of confusion. Defendant E. Hise even acknowledged that "the average person - if you say go to GoPets . . . would probably assume to go to gopets.com. . .Everybody knows on the Internet when you say GoPets, you're going to gopets.com.  Everybody knows that."  SUF ¶¶ 54-55.

Plaintiff also presents undisputed evidence that the other *Sleekcraft* factors weigh in its favor.  Notably, it presented evidence, five declarations of actual customers, attesting to actual confusion due to the presence of the <gopets.com> website.  *See* SUF ¶¶ 47-52.  At both the preliminary injunction stage and now, Defendants never disputed the presence of actual confusion.

Defendants' sole argument concerning infringement is that the mere registration of a domain name does not constitute commercial use and is therefore not prohibited by the Lanham Act.  They cite *Lockheed Martin Corp. v. Network Solutions, Inc.*, 985 F.Supp. 949, 957 (C.D. Cal. 1997), which noted that "something more than the registration of the name is required before the use of a domain name is infringing."

Defendants never offered products or services for sale or placed advertising on <gopets.com>.  SGI ¶¶ 4-5.  However, Defendants unquestionably did more than mere registration: they used Plaintiff's mark as a domain name to identify their website.  *See id.* (noting that such use has been held to be infringing).  Not only did they use Plaintiff's mark in their website address, they posted content in March 2007 that used Plaintiff's mark to give the impression that they may be launching a virtual pet site.  Their assertion that some mysterious "intern" may have inserted the term "gopets" into their website and metatags carries no weight, as it is based solely on vague assertions and contradicts Defendants' plain acknowledgment throughout this litigation that they are the parties responsible for the <gopets.com> website.

For the foregoing reasons, the Court concludes that no genuine issue of material fact remains as to whether Defendants' use of <gopets.com> infringed Plaintiff's GOPETS mark.

//

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

//
//

**B.     Cybersquatting (ACPA) with Respect to Defendants' Registration of the Nineteen Domain Names**

As this Court noted in a similar case several years ago,

> cybersquatters are those who: (1) "register well-known domain names in order to extract payment from the rightful owners of the marks;" (2) "register well-known marks as domain names and warehouse those marks with the hope of selling them to the highest bidder;" (3) "register well-known marks to prey on customer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site;" and (4) "target distinctive marks to defraud customers, including to engage in counterfeiting activities."

*Garden of Life, Inc. v. Letzer*, 318 F. Supp. 2d 946, 960 (C.D. Cal. 2004) (citing S. Rep. No. 106-140 at 5-6).

Under the ACPA a person is liable to the owner of a protected mark if that person "has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section" and "registers, traffics in, or uses a domain name that in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark. . ." 15 U.S.C. § 1125(d)(1)(A). Congress enumerated a list of nine factors to consider "in determining whether a person has a bad faith intent" [15 U.S.C. §1125(d)(1)(B)(I)], but it is not an exclusive list. *Interstellar Starship Services*, 304 F.3d at 946 -947 (internal quotations and citations omitted). "[I]nstead, the most important grounds for finding bad faith are 'the unique circumstances of the case, which do not fit neatly into the specific factors enumerated by Congress.'" *Id.*

The ACPA also contains a safe harbor provision: Bad faith "shall not be found in any case in which the court determines that the person believed and had a reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

For the reasons stated below, the Court grants Plaintiff's motion as to the ACPA claim.  Plaintiff has established that Defendants' registration of the nineteen domain names violate the ACPA.  Defendants' bad faith intent to profit from the success of Plaintiff's business is plain from the uncontroverted facts, and no jury reasonably could find otherwise.  *See, e.g.*, SUF ¶¶ 30, 31 (the brazenly extortionate email and letter that Defendants sent to Bethke in December 2006).

## 1. Plaintiff's mark was distinctive at the time of Defendants' domain name registration.

The ACPA imposes liability only when "the mark [was] distinctive at the time of registration."  15 U.S.C. § 1125(d)(1)(A)(ii)(I).  There can be no dispute that the GOPETS mark was distinctive at the time Defendants registered the eighteen additional domain names starting in November 2006.  The only issue is whether <gopets.com> was registered at a time when Plaintiff had a distinctive mark.

According to Plaintiff, although E. Hise originally registered <gopets.com> in 1999, before GoPets, Ltd. came into existence, the distinctiveness requirement is satisfied because E. Hise transferred <gopets.com> to Digital Overture in December 2006, well after Plaintiff acquired its service mark.

Defendants contest the fact that the transfer even took place.  However, their admission during discovery establishes that E. Hise did transfer the registration to Digital Overtures in December 2006.  *See* SUF ¶ 34; Forsheit Decl., Exs D & F.  Furthermore, Defendants fail to challenge the documents produced by the registrar, Network Solutions, LLC, showing that a transfer to Digital Overture was completed on December 14, 2006.  *See* SUF ¶ 34; Declaration of Clifford S. Davidson, Ex. C at 76-85.

Plaintiffs cite case law, which Defendants do not refute, establishing that a re-registration as a result of a transfer of a domain name qualifies as "registration" under the ACPA.  *See Schmidheiny v. Weber*, 319 F.3d 581, 583 (3d Cir. 2003).  *Schmidheiny* presents an analogous situation where an individual defendant personally registered the contested domain name but subsequently transferred the registration to his company.  *Id.* at 582.  The Third Circuit interpreted the concept of "registration" in 15 U.S.C. § 1129, a

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | | Date | June 10, 2008 |
|----------|------------------------|---|------|---------------|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | | |

provision that protects an individual's name from cybersquatters, to refer not only to the registration at the time the domain name was created, but to registration by a subsequent registrant. *Id.* at 583. In this case, the ACPA provision protecting trademarks is at issue. However, the Court does not believe there is any relevant or material difference between the use of "registration" in 15 U.S.C. § 1129 and in 15 U.S.C. § 1125(d)(1). Because the purpose of the ACPA is to prevent cybersquatting on well-known marks or names, a subsequent registration of a domain name with the bad faith intent to profit from another's protected mark gives rise to liability.

### 2. Plaintiff has proven bad faith intent sufficient to warrant summary adjudication.

The nine factors in 15 U.S.C. § 1125(d)(1)(B)(I) are:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|----------|----------------------|------|---------------|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

Regarding the factors in 15 U.S.C. § 1125(d)((B)(I) that indicate the presence of bad faith intent, Plaintiffs rely on factors I, III, IV, V, VI, VIII and IX, as well as the overall set of unique circumstances of the parties' history. Defendants concede factors I, III, VIII and IX: they have no trademark or other intellectual property rights in any of the nineteen domain names; they have not used <gopets.com> in connection with the bona fide offering of any goods or services; the GOPETS mark is distinctive; and they have registered multiple domain names that are confusingly similar to Plaintiff's mark.

Defendants dispute only those factors that directly address their intent (factors V, VI, and VII), stating through their declarations they had reasonable grounds to believe their use of the domain names was fair use or otherwise lawful. The Court only need addresses Factors V and VI, because Plaintiffs do not rely on Factor VII. Viewing the evidence pertinent to Factors V and VI in the light most favorable to Defendants, the Court finds that a reasonable jury undoubtedly would have to find that Defendants intended to divert consumers to <gopets.com> and that from late 2004 onward their intent was to sell <gopets.com> for financial gain rather than to use it for the offering of goods and services.

Factor V: Defendants' intent to divert consumers to <gopets.com> and its other domain names away from Plaintiff's website is plain, given their awareness that their domain names would be confused with Plaintiff's mark. In *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 269 (4th Cir. 2001) (affirming summary judgment in favor of trademark owner), the court found compelling that defendants were aware when they registered the domain name that there might be confusion with

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | | Date | June 10, 2008 |
|---|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | | |

Volkswagen and that some day they might sell the site to Volkswagen "for a lot of money." That is the case here, too. Although there is no evidence Defendants used any of the additional eighteen domain names, the fact that they began registering those domain names while corresponding with Plaintiff regarding the sale of <gopets.com> is evidence that they intended to have those additional domain names cause confusion with Plaintiff's domain names. Therefore, Plaintiff has proven this factor.

Factor VI: This factor pertains to Defendants' offer to sell the domain name "for financial gain without having used, or having an intent to use, the domain name in the bonafide offering of any goods or services. . . ." Defendants apparently only dispute this factor to the extent that Plaintiff alleges they never had any intent to use <gopets.com>. Regardless of Defendants' original plans, Plaintiff clearly has demonstrated this factor.

Defendants admit they never used <gopets.com> to generate revenue from the sale of goods and services or from advertising. SGI ¶ 4-5. Defendants have not even established that they had adopted a business plan or done anything beyond "research and development." SUF ¶ 10; Declaration of Michael A. Firestein, Ex. A (Kimberly Hise Dep. 140:19-150:25); Minute Order, Dec. 17, 2007 at 7. In fact, Defendants told Bethke that they had put the development of <gopets.com> "on hold." SUF ¶ 10. Prior to March 2007, it appears that Defendants had no content at all on <gopets.com>, other than a link to the WIPO decision of July 2006.

Moreover, Defendants suggested to Bethke that the domain name would be sold to the highest bidder. *Id. See Virtual Works, Inc.*, 238 F.3d at 270 (noting as significant defendant's statement to plaintiff that it would auction off the domain name, as it indicates that defendant hoped plaintiff would make a high offer in order to protect its mark). Bethke declined to participate in this auction but he made multiple offers after the supposed auction passed. Yet Defendants rejected those offers, including an offer of $40,000 on November 15, 2006. Around the same time, beginning in late October 2006, Defendants began registering additional domain names containing the terms "gopet" or "gopets." SUF ¶¶ 25, 29, 45. Barely a month after Bethke's $40,000 offer, Defendants communicated a $5 million offer over Bethke's head directly to Plaintiff's investors. This was patently extortionate, despite Defendants' protestation that their December 11 letter "did not threaten that Defendants would take steps to exacerbate consumer confusion." SGI ¶ 11. Reasonable jurors could not credit that claim, given that

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 07-1870 AHM (VBKx) | | Date | June 10, 2008 |
|---|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | | |

Defendants wrote: "Any time delays in realizing ownership of the domain would continue to confuse newly adopted gopetslive.com users. . . ." SUF ¶ 32.  And when Plaintiff rejected the $5 million offer, Defendants *did* take steps to exacerbate consumer confusion in March 2007, by posting content on <gopets.com>, along with the cartoony letters and little paw prints, that in fact caused confusion among Plaintiff's customers.  SUF ¶¶ 40-41, 47-52.  Plaintiff soon filed this lawsuit, and weeks later, Defendants registered yet more domain names using "gopet" and "gopets."  SUF ¶¶ 43-44.

Defendants emphasize that they registered the <gopets.com> domain name years before GOPETS Ltd. acquired its trademark rights.  They do not dispute, however, that by the time they re-registered <gopets.com> and registered additional similar domain names, they were aware of Plaintiff's trademark rights and they no longer intended to use any of those domain names for *bona fide* commerce.  Furthermore, documents produced by non-party GoDaddy.com, Inc., a top domain name registrar, show that Defendants have registered over 1,300 domain names, almost all of them after 2004.  SUF ¶ 60.

Defendants offer no evidence to mitigate the inescapable significance of this sequence of events, except for conclusory, uncorroborated assertions that they did not have bad faith intent.  Defendants make that claim in order to obtain protection under the ACPA's "safe harbor" defense.  That defense only applies when the defendant both "believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).  Defendants state that the WIPO's decision that they may retain ownership of the <gopets.com> domain name "caused [them] to believe that the use of the domain name was a fair use or otherwise lawful" E. Hise Decl. ¶ 6; J. Hise Decl. ¶ 6.  They further state: "I had also read the [ACPA] and numerous articles about Cybersquatting and the rights of domain name owners.  This information also caused me to firmly believe that I and my company had every right to have, to keep, to use and to sell the domain name."  *Id.* ¶ 7.  This is insufficient to create a genuine issue.  Indeed, it does not jibe with the WIPO's very findings and determination that plaintiff owned the GOPETS mark and that <gopets.com> was identical or confusingly similar to it.

Defendants have not identified the provisions in the ACPA and the cybersquatting articles that supposedly gave them the impression that they had the right to exploit their

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

ownership of domain names in the manner that Defendants did.  Their contention that they have acted in good faith was soundly rejected by the WIPO just a few weeks ago.  (*See* Notice to Court of WIPO Decision, filed April 30, 2008, Ex. A.)  Defendants have not established "reasonable grounds" for their subjective belief.  § 1125(d)(1)(B)(ii).

Moreover, as the Fourth Circuit has noted, any admission of hope of profiting from consumer confusion is an indication of bad faith and thus disqualifies a defendant from the ACPA's safe harbor.  *Virtual Works, Inc.*, 238 F.3d at 270 (holding that the fact that defendants intended in part to sell their domain name for a lot of money was sufficient to disqualify them from the safe harbor).  Just like the defendant in *Virtual Works*, the Hises knew at the time they registered the eighteen additional domain names and at the time they processed the re-registration of <gopets.com> under their company name that they were registering domain names "bearing a strong resemblance to a federally protected trademark."  *Id.*  Certainly by the time of these developments, a reasonable jury undoubtedly would find, the idea of selling <gopets.com> for a lot of money to Plaintiff was Defendants' only use for the domain name.

A reasonable jury could only conclude that Defendants saw an opportunity for a windfall and engaged in tactics to maximize the "ransom" they can get Plaintiff to pay.  *See Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 493 (2d. Cir. 2000) (defining cybersquatting as "prevent[ing] use of domain name by the mark owners, who not infrequently have been willing to pay 'ransom' in order to get 'their names' back").  A reasonable jury also could only conclude that Defendants persisted in unlawful activity by registering domain names similar to Plaintiff's mark after the filing of Plaintiff's suit.  *See Pinehurst, Inc. v. Wick*, 256 F.Supp.2d 424, 433 M.D.N.C. 2003) (granting summary judgment and noting that defendants' registering of additional similar domain names after the start of litigation demonstrated particular recalcitrance).   Based on all the totality of the evidence recited in this order, the Court concludes that Plaintiff is entitled to a judgment that Defendants' nineteen domain names violated the ACPA.[6]

_____

[6]Defendants' contention that it is inappropriate to find bad faith intent on summary judgment is incorrect.  Courts have not hesitated to find to find bad faith intent warranting judgment on ACPA claims, if the evidence warrants it.  *See, e.g.*, *Venetian Casino Resort, LLC v. Venetiangold.Com*, 380 F.Supp.2d 737, 746 (E. D. Va. 2005).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

//
//

## VII.   RELIEF

Plaintiff seeks injunctive relief that includes a broad order requiring defendants  to transfer domain names, an award of  the maximum statutory damages under the ACPA, and attorney's fees under 15 U.S.C. § 1117(a).  In their brief Defendants did not address any issues regarding the requested relief.

### A.      Injunctive Relief under the ACPA

Plaintiff asks the Court to order Defendants to transfer to it "gopets.com" and the additional eighteen domain names, "as well as any other domain names containing the GOPETS mark or confusingly similar mark." (Proposed Injunction ¶¶ 6B, 6C).  Under 15 U.S.C. § 1125(d)(1)(C), a court may order "the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."  "Even in egregious cases of cybersquatting, however, the district court retains discretion to fashion appropriate relief, and it need not force the transfer of the offending domain name." *Interstellar*, 304 F.3d at 948.  As the Fourth Circuit has noted, "[t]he ACPA was not enacted to give companies the right to fence off every possible combination of letters that bears any similarity to a protected mark." *Virtual Works, Inc.*, 238 F.3d at 271.

Because Defendants' unlawful activities grew out of and centered on the primary domain name at issue, gopets.com, that name clearly should be transferred to Plaintiff. The record indicates that the Defendants registered the additional domain names as a pressure tactic, as shown by the fact that they never actually developed websites using the additional eighteen domain names.  It is true that some of the names, such as "egopets.com" and "mygopets.com" and "igopets.com" contain the letters e, g, o, p, e, t and s in sequence but are not as likely to be confusing, as is the case with "goingpets.com."  That fact may warrant less than the maximum damages, but all those marks are functionally identical to the protected mark (they consists of "gopets." and a suffix) and all were registered *after* Defendants had notice of the mark.  Accordingly, the Court ORDERS that all shall be transferred.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

### B.     Monetary Relief under the ACPA

Plaintiff has elected statutory damages under the ACPA, 15 U.S.C. § 1117(d). Under the statute, the court has the discretion to award statutory damages that it "considers just," within a range from $1,000 to $100,000 per domain name. *See id.* At the hearing held on June 9, 2008 (after the parties had received the Court's initial order dated May 27, 2008), Defendants argued for the first time that the issue of statutory damages should go to the jury, citing *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998). But *Feltner* held that the Seventh Amendment provides a right to a jury determination of the amount of statutory damages for copyright infringement. *Id.* at 342. Even if *Feltner* were extended to the ACPA, which Defendants made no attempt to establish, it does not require courts to reserve for the jury issues that could be properly decided on summary judgment. *See Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 64 (1st Cir. 2000) (noting that post-*Feltner*, remand to jury on issue of copyright statutory damages and other issues not necessary if the evidence meets the standard for a directed verdict.) There is no question that courts may award statutory damages under section 1117(d) in summary judgment proceedings, if the facts upon which the court bases its award are not in dispute. *See, e.g.*, *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 277-78 (5th Cir. 2002) (affirming district court's award of statutory damages on summary judgment); *Shields v. Zuccarini*, 254 F.3d 476, 487-77 (3d Cir. 2001) (same); *Pinehurst*, 256 F. Supp. 2d at 433 (awarding statutory damages on summary judgment); *Int'l Bancorp., L.L.C. v. Societe Des Bains De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 490-91 (E.D. Va. 2002) (same).

Plaintiff seeks the maximum $100,000 for each of the nineteen domain names, but cites no ACPA cases in which courts have awarded damages of that magnitude for so many domain names without specific, focused analysis of the ways in which defendants used each domain name. The cases Plaintiff cites in support a $100,000 award for each domain name involved only one or two domain names. *See Lahoti v. Vericheck, Inc.*, 2007 WL 4269791 (W.D. Wash., Dec. 3, 2007) (awarding $100,000 for one domain name in case of adjudicated cybersquatter); *Graduate Management Admission Council v. Raju*, 267 F.Supp.2d 505 (E.D. Va. 2003) (awarding $200,000 for two domain names where defendant blatantly copied and distributed online plaintiff's test preparation materials); *Mirage Resorts, Inc. v. Cybercom Productions*, 228 F. Supp. 2d 1141 (D. Nev. 2002) (awarding $100,000 where defendant used plaintiff's trademark name in a domain

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|----------|----------------------|------|---------------|

| Title | GOPETS LTD. v. EDWARD HISE, *et al.* |
|-------|--------------------------------------|

name for a pornographic website with links to an online casino independent of Plaintiff's casino enterprise).

In general, statutory damages for cybersquatting should be based on a balancing of the equities, the egregiousness of defendant's conduct, the actual injury to plaintiff, and the need for deterrence. *See E. & J. Gallo Winery*, 286 F.3d at 278 (noting that statutory damages for ACPA violations provide restitution of profit and reparation for injury, as well as deterrence of wrongful conduct). Courts have awarded the maximum damage amount, $100,000, for the most egregious cybersquatters. *See infra.* As one court has noted, courts generally also deem such cases "exceptional" for the purposes of awarding attorneys' fees under section 1117(a). *Int'l Bancorp*, 192 F. Supp. 2d at 490. In contrast, lower statutory damages are the norm where defendants' conduct was not "exceptional," *i.e.*, not particularly willful, recalcitrant, malicious or fraudulent and did not cause actual economic harm. *See id.* (awarding statutory damages of $5,000 against online gambling companies for each of two infringing domain names which contained infringing content and $1,000 for forty-one remaining infringing domain names that were not used).

Maximum statutory damages with respect to <gopets.com> is warranted. Defendants' overall behavior and the demonstrated confusion they caused to Plaintiff's goodwill indicate that the need for deterrence is present. For example, E. Hise stated at his deposition that "the average person - if you say go to GoPets . . . would probably assume to go to GoPets.com. . .Everybody knows on the Internet when you say GoPets, you're going to GoPets.com. Everybody knows that." SUF ¶¶ 54-55. Despite that knowledge, he and his co-defendant proceeded to register even additional potentially confusing domain names during the very pendency of this lawsuit. Moreover, documents produced by non-party GoDaddy.com, Inc., a top domain name registrar, show that Defendants have registered over 1,300 domain names. SUF ¶ 60. Finally, the fact that Defendants attempted, only a few months ago, to "reverse hijack" Plaintiff's domain name, <gopets.net>, only further illustrates the need for significant award.

However, there is no need to impose maximum or even large statutory damages for each of the additional eighteen domain names. There is no evidence that those additional domain names actually injured Plaintiff or contained any content, unlike the confusion that Defendants' use of <gopets.com> caused among Plaintiff's customers. Those additional domain names are significant in that they further demonstrate the Defendants'

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | | Date | June 10, 2008 |
|---|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | | |

desire to maximize their profit from  <gopets.com> and their unwillingness to recognize Plaintiff's trademark rights and to comply with the requirements of the ACPA.  Because the Court has already taken Defendants' overall course of behavior into account in determining that $100,000 is a just award for <gopets.com>, $1,000 for each of the additional domain names is sufficient to achieve the ends of the ACPA.

Given the above indisputable findings, the Court awards $100,000 for defendants' unlawful use of gopets.com and $1,000 for each of the remaining infringing names, for a total of $118,000 damages.  This is a joint and several obligation on all defendants.

### C.    Attorney's Fees under 15 U.S.C. § 1117(a)

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  Typically, courts have only found cases of malicious, fraudulent, deliberate or willful conduct (shown by clear and convincing evidence) to be "exceptional."  *See Lindy Pen,* 982 F.2d at 1409; *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1276 (9th Cir. 1982); *CollegeNET, Inc v. XAP Corp.*, 483 F.Supp.2d 1058, 1068 (D. Or. 2007) (willfully deceptive conduct that resulted in actual damages).

Defendants intentionally trampled on Plaintiff's trademark rights when they placed confusing content on gopets.com in March 2007, which they did not take down until after the preliminary injunction issued.  That violation was more egregious than the mere act of squatting on an unused domain name.  Moreover, given Defendants' comparative lack of sophistication, the Court is reluctant to saddle them with a huge award of fees, even though after the preliminary injunction order was entered they obstinately adhered to their claims, as evidenced by their WIPO reverse domain name hijacking effort.  Balancing all these factors, the Court finds that to a limited extent, Plaintiff is entitled to fees.
//
//
//
//
//

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-1870 AHM (VBKx) | Date | June 10, 2008 |
|---|---|---|---|
| Title | GOPETS LTD. v. EDWARD HISE, *et al.* | | |

//
//
//

      Plaintiff shall submit a declaration in support of a requested fee award limited to their counsel's efforts in obtaining and enforcing the preliminary injunction. It shall present an application that includes their timesheets and all the data necessary to show the billing rates for compensable attorneys and paralegals (including changes, if any, that occurred during that period). The Court will not award fees for time incurred by attorneys who performed paralegal-level services and generally will not award fees for duplicative work or internal conferences, so the attorneys' fees application should be prepared accordingly. As indicated at the hearing on June 9, 2008, the application shall be filed by June 11, 2008. Defendants may respond by not later than June 25, 2008.

      IT IS SO ORDERED.

_____ : _____

Initials of
Preparer

sm